# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:19-cv-22331

LLOYD'S UNDERWRITERS, et al,

      Petitioners,

v.

TD BANK, N.A.,

      Respondent.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDING

Pursuant to 28 U.S.C. § 1782, Petitioners (the "Insurers[1]"), respectfully apply to this Court for an order authorizing them to serve the subpoena attached as Exhibit A to the Petition upon Respondent, TD BANK, N.A. ("TD Bank"), as well as for the entry of the Agreed Protective Order, attached as Exhibit B to the Petition, governing TD Bank's production of

---

[1] The "Insurers" refers to the following entities, collectively: "LLOYD'S UNDERWRITERS" that subscribe to policy number MMF/1710, Primary London reference number B0509QA025509 and Excess London reference numbers QA025609, QA025709, AQ025809 and QA025909; ANTARES UNDERWRITING LIMITED, for itself and on behalf of all members of Lloyd's Syndicate 1274 (AUL) for the operating year of 2009; CATLIN SYNDICATE LIMITED, for itself and on behalf of all members of Lloyd's Syndicate 2003 (SIC) for the operating year of 2009; NOVAE CORPORATE UNDERWRITING LIMITED and/or NOVAE SYNDICATES LIMITED, for themselves and on behalf of all members of Lloyd's Syndicate 2007 (NVA) for the operating year of 2009; ACE CAPITAL LIMITED, ACE CAPITAL IV LIMITED, and ACE CAPITAL V LIMITED, for themselves and on behalf of all members of Lloyd's Syndicate 2488 (AGM) for the operating year of 2009; BRIT UW LIMITED, for itself and on behalf of all members of Lloyd's Syndicate 2987 (BRIT) for the operating year of 2009; ASPEN INSURANCE UK LIMITED, GREAT LAKES REINSURANCE (UK) PLC, LEXINGTON INSURANCE COMPANY, AIG INSURANCE COMPANY OF CANADA (formerly known as AIG Commercial Insurance Company of Canada) and/or AIG COMMERCIAL INSURANCE COMPANY OF CANADA, CHARTIS EXCESS LIMITED (formerly known as AIG Excess Liability Insurance International Limited) and/or AIG EXCESS LIABILITY INSURANCE INTERNATIONAL LIMITED, ALLIED WORLD ASSURANCE COMPANY LTD., ARCH INSURANCE COMPANY AND/OR ARCH INSURANCE CANADA LTD., AXIS SPECIALTY INSURANCE COMPANY and/or AXIS SPECIALTY LIMITED, CHUBB INSURANCE COMPANY OF CANADA, ENDURANCE SPECIALTY INSURANCE LTD., HOUSTON CASUALTY COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, MARKEL BERMUDA LIMITED (formerly known as Max Bermuda Ltd.) and/or MAX BERMUDA LTD. and XL INSURANCE COMPANY PLC

documents pursuant to the subpoena, for use in an ongoing civil proceeding in Ontario, Canada. In support of the Petition, the Insurers submit this Memorandum of Law.

## INTRODUCTION

This Petition seeks the production of unredacted banking documents for accounts held at TD Bank and its corporate predecessor Commerce Bancorp by the now-defunct law firm, Rothstein, Rosenfeldt, Adler, P.A. ("RRA"), funds operated by Banyon Funding, LLC and other accounts related to Scott Rothstein for the time period no earlier than November 8, 2007 to November 10, 2009 ("Unredacted Banking Documents") for use in a currently pending lawsuit in Ontario, Canada between the Parties, Ontario Superior Court of Justice (the "Ontario Court") Court File No. CV-14-495750 (the "Ontario Action") between the Insurers and TD Bank. During the early stages of discovery in the Ontario Action, TD Bank informed the Insurers that it could not, and would not, produce the Unredacted Banking Documents for bank accounts at TD Bank reflecting the movement of funds involved in a Ponzi scheme orchestrated by Scott Rothstein ("Rothstein")  because of its position that United States law prohibited TD Bank from producing the Unredacted Banking Documents to the Insurers.  The Insurers moved to compel the production of the Unredacted Banking Documents in the Ontario Action, and the Ontario Court ruled that, based on principles of comity, it would not require TD Bank to produce the Unredacted Banking Documents and risk violation of United States law.  Instead, the Ontario Court ordered the Insurers to seek the aid and assistance of the appropriate United States court to obtain the Unredacted Banking Documents consistent with United States law.  In compliance with the Ontario Court order, and with no ability to obtain the Unredacted Banking Documents in the Ontario Action, the Insurers now come to this Court, requesting an order authorizing the Insurers to serve a subpoena on TD Bank for production of the Unredacted Banking Documents

2

for use in the Ontario Action.  The Insurers further request the entry of the Agreed Protective Order, attached as Exhibit B to the Petition governing the production to protect any privacy interests that may be implicated by the production of the Unredacted Banking Documents to the Insurers.  Pursuant to Dunphy, J.'s direction TD has been cooperating with the Insurers in order that the Insurers can obtain disclosure of the unredacted banking documents. To that end, prior to the filing of the Petition, TD Bank and the Insurers reached an agreement regarding the terms of the Agreed Protective Order attached to the Petition.  The serving of the subpoena on TD would be done strictly out of technical necessity and not any contention between the Parties with respect to the production of the Unredacted Banking Documents pursuant to the Agreed Protective Order.

## STATEMENT OF FACTS

The Ontario Action involves an insurance coverage dispute arising out of the Rothstein Ponzi scheme.  According to the scheme, RRA clients assigned their right to receive proceeds from confidential structured settlements, which were to be paid over time, to third party-purchasers (the "Investors") in exchange for discounted lump-sum payments.  Investors would make up-front cash payments to Rothstein, who would supposedly use the cash to make the discounted payments to RRA clients.  In exchange, Investors would supposedly receive the right to collect the full amount of the settlements at a later date or dates, or over time.  In fact, there were no RRA clients, no settlements and no settlement proceeds.  Instead, the Investors' funds were used to pay other Investors and to sustain Rothstein's lavish lifestyle.

Between 2005 and 2009, Rothstein opened a number of accounts at Commerce Bank which were used to facilitate the scheme (the "RRA Accounts").  Commerce Bank was subsequently acquired by TD Bank.  Rothstein represented to Investors that the settlement funds

3

had been paid by corporate defendants and were safely deposited into one of the RRA Accounts. In order to reassure some Investors that the settlement funds from the settlement they had purchased had been deposited and were simply waiting to be paid out on schedule, Rothstein established separate accounts at TD Bank (the "Settlement Accounts"), which Rothstein represented held the settlement proceeds.  Rothstein told some Investors that these Settlement Accounts were "locked" such that the monies in them could not be distributed except to the specified Investor for whom the funds were being held.  In reality, the Settlement Accounts almost always held less than $100.

In October 2009, the scheme was exposed when Rothstein started to default on Investor payments.  RRA entered bankruptcy, and Rothstein pleaded guilty to criminal charges. Rothstein is currently serving 50 years in prison.  Frank Spinosa, a TD Bank employee, also pleaded guilty to criminal charges.

As part of the fallout from the Rothstein Ponzi scheme, a number of Investors sued TD Bank, alleging that TD Bank was vicariously liable for Spinosa's involvement in the fraud.  In total, Investors filed 18 lawsuits against TD Bank in Florida federal and state courts (the "Investor Lawsuits").  RRA's bankruptcy trustee also filed an adversary action against the bank (the "RRA Lawsuit").

The Insurers issued a policy to TD Bank with CAD$300 million in coverage under a financial institution bond and professional liability policy pursuant to an Integrated Risk Programme of layered policies subject to an applicable retention of CAD$100 million. (collectively, the "Policies").  TD Bank reported the lawsuits to the Insurers.

The only lawsuit against TD Bank to proceed to final judgment was the lawsuit filed by Coquina Investments (the "Coquina Action").  On January 18, 2012, a U.S. District Court jury

4

returned a verdict against TD Bank in the Coquina Action, resulting in a judgment of $67 million against TD Bank for fraudulent misrepresentation and aiding and abetting fraud, consisting of $32 million in compensatory damages and $35 million in punitive damages.  Although TD Bank filed post-trial motions and an appeal, the verdict was upheld.  Thereafter, TD Bank chose to settle the remaining lawsuits.  In all, TD Bank reportedly paid approximately USD$443 million with respect to the Investor Lawsuits and the RRA Lawsuit, as well as approximately USD$46 million in defense costs.

TD Bank submitted a claim to the Insurers for the aggregate policy limits of $300 million, plus interest, to cover payments for settlements, judgments, and defense costs incurred in connection with the Rothstein Ponzi scheme.  The Insurers did not provide coverage. Accordingly, in January 2014, TD Bank sued the Insurers in the Ontario Action, claiming the Insurers owe TD Bank the aggregate policy limits of $300 million, and other amounts.  There are a number of issues in the Ontario Action, including but not limited to:

(1)     The timing and flow of funds in the Rothstein scheme;

(2)     How and when the Investors suffered a loss as a result of the Rothstein scheme;

(3)     The amount of each Investor's loss;

(4)     The timing and flow of funds within TD Bank and from Investors to the RRA accounts at TD Bank;

(5)     The extent of TD Bank's role in the Rothstein Scheme;

(6)     Whether the alleged losses were brought about by any dishonest, fraudulent or criminal act or omission by a TD Bank director, officer or employee;

(7)     Whether any TD Bank director, officer or employee intended to or did benefit from the Rothstein Scheme;

(8)     Whether TD Bank violated money laundering laws in connection with the

5

Rothstein Scheme;

(9)        Whether any TD Bank director, officer or employee knew, suspected or reasonably should have known or suspected that Rothstein or RRA would benefit from their activities;

(10)       Whether and when TD Bank suffered a loss (as defined in the Policies) relating to the Rothstein scheme and, if so, whether that loss was "direct" within the meaning of the Policies;

(11)       Why TD Bank settled the remaining Investor Lawsuits and the RRA Lawsuit, including in part because of fear of reputational damage;

(12)       Whether TD Bank's settlements were reasonable under the circumstances;

(13)       For each of the settlements, how TD Bank did (and how the Court should) allocate payments as between general damages (which are potentially covered by the Policies) and punitive damages (which are not covered by the Policies);

(14)       What relationship TD Bank had to the funds in the RRA Accounts; and

(15)       Whether TD Bank's settlement payments were reflective of the amount lost by each Investor.

TD Bank advised the Insurers that it refused to produce, among other things, the Unredacted Banking Documents in the Ontario Action, citing the risk of violating United States law if it produced the documents. At the same time, TD Bank advised that it refused to take any steps to obtain such permission and suggested that the Insurers should take whatever steps were necessary to obtain the documents if they wanted them.

Accordingly, the Insurers filed a motion in the Ontario Action to compel the production of the Unredacted Banking Documents from TD Bank.  A copy of the motion is attached as **Exhibit 1**.  In the motion to compel, the Insurers argued that the Unredacted Banking Documents are relevant to the Ontario Action, in TD Bank's possession, control or power, and are otherwise not privileged.  [Ex. 1 at 2].

As set forth in the motion to compel filed by the Insurers in the Ontario Action, the Unredacted Banking Documents include the complete banking documents reflecting the movement of funds into, through, and out of the RRA Accounts. The Unredacted Banking Documents are relevant to the claims and defenses in the Ontario Action because they show:

(a)     how and when funds moved through the RRA Accounts,

(b)     what the Investors lost and when they lost those funds, and

(c)     whether any Investors received surpluses through the settlements they received.

That is, the movement of funds shows the relationship between monies lost by Investors and the settlement funds paid by TD Bank which are issues that must be resolved in the Ontario Action. The Unredacted Banking Documents also reveal the nature of the accounts through which funds moved.

TD Bank has also taken the position that it is entitled to coverage, in part, because some of the funds were in accounts that were labeled as, or functioned as, trust accounts. Although the Insurers dispute this position, the flow of funds through trust accounts will be litigated as part of the Ontario Action.  The Unredacted Banking Documents would further reveal information about which of the funds moved through trust accounts.

On June 28, 2016, the Ontario Court issued an order (the "Order"), which, *inter alia*, directed the Insurers to seek the "aid and assistance of the courts of the United States to secure the production of the unredacted information." A copy of the Order is attached as **Exhibit 2**. The Ontario Court held that, based on principles of comity, a Canadian court could not require TD Bank to violate United States law. [Ex. 2 at 2].  Therefore, the Ontario Court ordered the Insurers to seek relief from a United States court. *Id.*

In accordance with the Order, the Insurers file this Petition under 28 U.S.C. § 1782 for

assistance to secure the Unredacted Banking Documents. The Unredacted Banking Documents are relevant to the Ontario Action for the reasons identified above. Further, by authorizing the issuance of the subpoena, the production of the Unredacted Banking Documents will not run afoul of United States law.  Accordingly, the Insurers respectfully request that this Court 1) enter an order allowing the Insurers to serve the subpoena attached as Exhibit A to the Petition, seeking the Unredacted Banking Documents, and 2) enter the Agreed Protective Order governing the production of the Unredacted Banking Documents, which is attached as Exhibit B to the Petition.

## MEMORANDUM OF LAW

### I.   Standard for §1782 Petition.

Section 1782 states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

"Beginning in 1948, 'Congress substantially broadened the scope of assistance federal courts could provide for foreign proceedings,' pursuant to 28 U.S.C. § 1782." *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S.

8

241, 247–48 (2004)).  "The history of Section 1782 reveals Congress' wish to strengthen the power of district courts to respond to requests for international assistance." *Lo Ka Chun v. Lo To*, 858 F.2d 1564, 1565 (11th Cir. 1988).  "Congress has intentionally granted the district courts **broad discretion** in granting judicial assistance under § 1782." *In re Application of Mesa Power Group, LLC*, 878 F. Supp. 2d 1296, 1301 (S.D. Fla. 2012) (emphasis added).

II.    **This Petition Satisfies the Statutory Requirements for Discovery.**

Under Section 1782, a district court may grant an application for judicial assistance if the following statutory requirements are met: (1) the request is made by "a foreign or international tribunal" or "any interested person"; (2) the request seeks evidence in the form of documents or testimony; (3) the evidence is "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought resides or is found in the district of the district court ruling on the application for assistance. *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007).  If the petition satisfies these requirements, then the district court has discretion on whether and how to grant an applicant's Section 1782 request. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1199 (11th Cir. 2016).

The Insurers clearly meet all of the statutory requirements. First, as parties to the Ontario Action, the Insurers are interested persons. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256, 124 S. Ct. 2466, 2478 (2004) ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"). Second, the petition seeks the production of evidence, namely TD Bank's Unredacted Banking Documents. Third, the documents sought are for use in a foreign tribunal—the Ontario Superior Court of Justice, namely the Ontario Court.  *See Foda v. Capital Health*, No. 10-80099, 2010 WL 2925382, at *1 (N.D. Cal. July 26, 2010) (finding Court of Queen's Bench in Alberta,

Canada clearly qualifies as foreign tribunal for purposes of Section 1782); *In re Letters Rogatory from Supreme Court of Ontario, Canada*, 661 F. Supp. 1168, 1169 (E.D. Mich. 1987) (noting that Supreme Court of Ontario, a predecessor to the Ontario Superior Court of Justice, is a "foreign tribunal" supervising the proceeding).   Lastly, TD Bank is found or resides in this district.   TD Bank operates numerous banks in the Southern District of Florida[2] and has systematic and continuous contacts with this district. *See In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.,* No. 08-20378-MC, 2011 WL 181311, at *7–8 (S.D. Fla. Jan. 19, 2011); *see also In re Kreke Immobilien KG*, No. 13 Misc. 110(NRB), 2013 WL 5966916, at *3 (S.D.N.Y. Nov. 8, 2013).   As further proof of its systematic contacts in the Southern District of Florida, TD Bank is registered to do business in Florida and was a defendant in several Underlying Actions in the Southern District[3] and in Florida Circuit Courts[4] where it did not contest jurisdiction. *See In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (noting that company from whom discovery was sought resided or was found in New York for purposes of Section 1782 where company was a defendant in an ongoing action in the Southern District of New York and did not contest jurisdiction).   Because all four statutory requirements are met, this Court has authority to grant the Insurers' Section 1782 petition.

---

[2]     According to its website, TD Bank has 30 locations in Miami, Florida, including bank branches and ATM locations. *See* TD Bank, www.tdbank.com/net/absearch/#value=Miami%2C%20FL (last visited May 18, 2018).

[3]     *Emess Capital, LLC v. Rothstein, et al*, Case No. 10-cv-60882; *Adams, et al v. Rothstein, et al*, Case No. 11-cv-61688; *Coquina Investments v. Rothstein, et al*, Case No. 10-cv-60786.

[4]     *Morse, et al., v. Gibraltar Private Bank & Trust, et al.,* in the 17th Circuit Court in and for Broward County, Florida, Case No. 10-CACE-24110; *Razorback Funding LLC, et al., v. Rothstein, et al., .,* in the 17th Circuit Court in and for Broward County, Florida, Case No. 09-CACE-062943; *Beverly, et*

III.     **The Discretionary Factors Support the Approval of the Petition.**

If the statutory requirements are satisfied, this Court retains its discretion on whether to grant a Section 1782 application. *In re Clerici*, 481 F.3d 1324, 1334 (11th Cir. 2007); *see In re Pimenta*, 942 F. Supp. 2d 1282, 1286 (S.D. Fla. 2013) ("If the aforementioned requirements are met then Section 1782 authorizes, but does not require, the Court to provide assistance.").   In deciding whether to exercise its authority in granting relief under Section 1782, the Supreme Court has recognized four additional factors to be considered:

2.      Whether "the person from whom discovery is sought is a participant in the foreign proceeding";

3.      "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"

4.      "[W]hether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and

5.      Whether the request is "unduly intrusive or burdensome."

*Clerici*, 481 F.3d at 1334 (citing *Intel*, 542 U.S. at 264-65).

The first *Intel* factor supports the Insurers' requested relief.   Although the Insurers are parties to the Ontario Action, which would normally cut against granting a Section 1782 application, *see Intel*, 542 U.S. at 264 ("the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"), in this instance, the Ontario Court has already ruled that the Insurers must seek relief in the United States in order to obtain the Unredacted Banking Documents.   Without this Court's assistance, the Insurers will have no means to obtain the Unredacted Banking Documents. Accordingly, the need for Section 1782 relief is readily apparent here.

_____

*al., v. TD Bank NA, et al., .,* in the 17th Circuit Court in and for Broward County, Florida, Case No. 12-

The second *Intel* factor also supports the Insurers' requested relief.  In its Order, the Ontario Court explicitly expressed its receptivity to United States federal court judicial assistance, ordering the Insurers to seek relief in the United States. [Ex. B at 9].

The third *Intel* factor also supports the Insurers' requested relief.  The Insurers' request does not conceal an attempt to circumvent foreign proof-gathering restrictions.  To the contrary, as noted above, the Ontario Court directed the Insurers to seek relief in the United States.

Finally, the Insurers' request for the Unredacted Banking Documents is not unduly intrusive or burdensome.  Notably, TD Bank has never objected to production of the Unredacted Banking Documents on grounds of burden.  Rather, TD Bank  indicated that it would be prepared to produce the Unredacted Banking Documents, provided this Court enters the appropriate order requiring TD Bank to do so. Thus, this request is neither unduly intrusive nor burdensome.  *See, e.g., In re Pimenta*, 942 F. Supp. 2d at 1289 (finding that request was not unduly intrusive where parties contemplated the scenario and mutually agreed to facilitate such a request).

## IV.    **The Unredacted Banking Documents are Discoverable and Can Be Produced Without Violating United States Law.**

In addition to satisfying the requirements of Section 1782, the discovery sought must still comply with the Federal Rules of Civil Procedure. *See In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R.L.*, No. 08-20378, 2011 WL 181311, at *6 (S.D. Fla. Jan. 19, 2011) ("Once a court determines that the above requirements of section 1782 are met, the   next   step   is   to   determine   whether   the   requested   discovery complies with   the Federal Rules of Civil Procedure.").  Section 1782 states that the district court "may prescribe the practice and procedure. . .for taking the testimony or statement or producing the document or

other thing." 28 U.S.C. § 1782(a).  Such practice and procedure may be "in whole or part the practice and procedure of the foreign country of the international tribunal." *Id.* If the court does not prescribe the practice and procedure, then the Federal Rules of Civil Procedure apply. *Id.*.

In the Ontario Action, TD Bank did not object on relevancy or privilege grounds.  As explained above, the Unredacted Banking Documents are plainly relevant to the Insurers' defense of TD Bank's claims.

Instead, TD Bank raised concerns that producing the Unredacted Banking Documents in the Ontario Action without a court order from the United States would run afoul of United States law.  TD Bank asserted that it could not produce the Unredacted Banking Documents without facing serious consequences under 15 U.S.C. § 6801, *et seq.*, known as the Gramm-Leach-Bliley Act ("GLBA"), as well as Florida's privacy law, Florida Statute Section 655.059.  Neither statute would be violated if this Court authorizes the issuance of the Subpoena.

Under United States federal law, the GLBA, as implemented by Regulation P, generally prohibits a financial institution from disclosing a consumer's non-public information to a non-affiliated third party, unless the financial institution provides notice and the consumer does not elect to prevent the disclosure. 15 U.S.C.A. §§ 6801, 6802.  However, the GLBA contains exceptions that allow a financial institution to disclose non-public personal information under certain circumstances, including

> to comply with Federal, State, or local laws, rules, and other applicable legal requirements; to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by Federal, State, or local authorities; *or to respond to judicial process* or government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law.

15 U.S.C.A. § 6802(e)(8) (emphasis added).  Courts construing the exceptions in Section

6802(e)(8) have held that the phrase "judicial process" encompasses disclosures made in response to civil discovery. *FDIC v. Florescue*, No. 8:12-cv-2547-T-30TBM, 2014 WL 12617810, at *2 (M.D. Fla. June 27, 2014); *Loef v. First Am. Title Ins. Co.*, No. 2:08-cv-311-GZS, 2012 WL 95305, at *1 (D. Me. Jan. 11, 2012); *Sierra Equity Group v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369, 1371 (S.D. Fla. 2009); *Alpha Funding Group v. Continental Funding, LLC*, 848 N.Y.S.2d 825, 831–32 (N.Y. Sup. Ct. 2007); *Marks v. Global Mortg. Group, Inc.*, 218 F.R.D. 492, 496 (S.D. W. Va. 2003).  Courts have interpreted "judicial process" as separate and independent from the exception permitting disclosures in response to "government regulatory authorities having jurisdiction over the financial institution for examination, compliance, or other purposes as authorized by law." *Marks*, 218 F.R.D. at 496.

Because TD Bank operates in Florida, Florida law also applies.  Under Florida law, "[t]he books and records of a financial institution are confidential and shall be made available for inspection and examination only . . . [a]s compelled by a court of competent jurisdiction, pursuant to a subpoena issued pursuant to . . .the Federal Rules of Civil Procedure. . ." Fla. Stat. § 655.059(e).  Thus, Florida law also allows TD Bank to disclose the Unredacted Banking Documents pursuant to a subpoena. *See Regions Bank v. Lynch*, No. 2:08-cv-00031, 2009 WL 395780, at *2 (M.D. Fla. Feb. 17, 2009) (noting that both the GLBA and Fla. Stat. §655.059 have carve out provisions for disclosures made pursuant to subpoenas and court orders). Furthermore, the statute provides that "this subsection does not prohibit. . .[a] financial institution from disclosing financial information. . .as set forth in 15 U.S.C.A. s. 6802 [the GLBA], as amended." Fla. Statute Section 655.059(b)(2).  In other words, if the disclosure is permitted under the GLBA, it is also permitted under Florida law.  Thus, TD Bank's disclosure of the Unredacted Banking Documents pursuant to the Subpoena is permitted under both the

14

GLBA and Florida state law[5].

## CONCLUSION

As the Insurers have demonstrated, this Petition satisfies both the statutory and discretionary requirements of Section 1782, as well as the Federal Rules of Civil Procedure. The Ontario Court has requested this Court's assistance in allowing TD Bank to produce the Unredacted Banking Documents, which are both relevant and highly important to the Insurers' defense in the Ontario Action. Thus, the Insurers respectfully request that this Court 1) enter an order authorizing them to serve the subpoena attached as Exhibit A to the Petition upon Respondent, TD Bank, and 2) enter the Agreed Protective Order governing TD Bank's production of documents pursuant to the subpoena, which is attached as Exhibit B to the Petition, for use in an ongoing civil proceeding in Ontario, Canada.

Dated: June 6, 2019                    Respectfully submitted,

                                       By:   /s/  *Cristina B. Rodriguez*
                                             Laura Besvinick
                                             Florida Bar No. 391158
                                             Cristina B. Rodriguez
                                             Florida Bar No. 0639982
                                             **STROOCK & STROOCK & LAVAN LLP**
                                             200 South Biscayne Boulevard, Suite 3100
                                             Miami, Florida 33131
                                             Telephone:  (305) 358-9900
                                             Facsimile:  (305) 789-9302
                                             lbesvinick@stroock.com
                                             cbrodriguez@stroock.com
                                             cfernandez@stroock.com

                                             *Attorneys for the Insurers*

---

[5]        Although the Insurers do not believe it is required, the Insurers will provide notice of this proceeding to counsel for the Investors in the Investor Lawsuits in the event any Investors wish to be heard.